CENTRAL TRUCK LINES, INC., a corporation, v. W. B. DOUGLASS, EUGENE S. MATHEWS, and JERRY W. CARTER, as Railroad Commissioners; and Leigh R. Powell, Jr., and Henry W. Anderson, as Receivers of and for Seaboard Air Line Railway Company, a railroad corporation.

173 So. 162.

En Banc.

Opinion Filed February 16, 1937.

Rehearing Denied March 24, 1937.

*Milam, McIlvaine & Milam,* for Petitioner;

*W. J. Oven, W. J. Oven, Jr.,* and *T. T. Turnbull,* for Respondents.

ELLIS, C. J.—A petition by Central Truck Lines, Inc., was filed for a writ of certiorari to be directed to W. B. Douglas and others, as Railroad Commissioners of the State of Florida, and Leigh R. Powell, Jr., and Henry W. Anderson, as Receivers of the Seaboard Air Line Railway

Company, to review certain orders of the Railroad Commissioners dated and numbered respectively April 26, 1934, No. 716; August 6, 1935, No. 777; December 27, 1935, No. 818; and August 16, 1936, No. 884, as the same were interpreted by the Commissioners, in their Traffic Circular No. 30, dated February 5, 1936.

The petitioner contended that such orders in the light of the Traffic Circular No. 30 became certificates of convenience and necessity to the Railway Company empowering it to conduct an auto transportation business within the full meaning of Chapter 14,764, Acts of 1931, without requiring the Company to meet the essential requirements of law imposed by the Act under which the operating authority was issued; that such orders so interpreted by the Railroad Commissioners are in violation of the petitioner's rights acquired by its certificate of convenience and necessity lawfully secured under the provisions of law applicable thereto.

The petition alleges that the Central Truck Lines, Inc., is a duly certificated Motor Highway Freight Carrier and Auto Transportation Company, under the laws of Florida, serving the territory between Jacksonville and Tampa via Baldwin, Starke, Waldo, Ocala, and thence to Tampa via Dunnellon and Brooksville, also to Tampa via Bushnell, Wildwood, and Plant City, also between Tampa and Pinellas Peninsula points, including Clearwater and by connections Tarpon Springs and intermediate points and other Pinellas Peninsula points. It is alleged that the petitioner is adequately capitalized and sufficiently equipped to abundantly meet and furnish all motor highway common carriage of freight reasonably required over said routes and has sufficient motor truck facilities to completely service all said points or places in common carriage of freight, and is ready and willing to supplement its present motor highway

service with any further schedules and additional equipment, warehouses or terminals which may reasonably be required in the public interest.

It is alleged that Orders No. 716, No. 777 and 818 issued to the Seaboard Air Line Railway Company contained the following limitations and restrictions:

"Against pick-up and delivery service at either terminal or at intermediate points;

"The transportation in motor highway freight carriage of only the freight delivered to the railway company at its stations which would otherwise be transported by rail;

"That such carriage, without pick-up and delivery privileges and devoted to carriage of freight which would otherwise move by rail in any event, be and remain wholly non-competitive with motor highway carriers over the route or between the terminals involved;

"That the motor highway freight privileges authorized be limited solely to a substituted carriage for carriage that would otherwise occur by rail."

But that such orders, including one made August 16, 1936, and numbered 884, in the light of Trade Circular No. 30, constituted an enlargement of privileges granted by original Certificates No. 183, dated April 20, 1933, to the Seaboard Air Line Railway Company.

Certificate No. 183 of Public Convenience and Necessity was based upon Order No. 590, in which it was recited that the Railroad Commissioners found the following facts to exist, viz.: the Company had been permitted to discontinue certain train service between Drifton and Monticello on condition that a daily freight train, Sunday excepted, should be operated between the two points handling all carload and less than carload freight into and out of Monticello and should furnish an adequate bus service between

the two points in lieu of said trains. Also that no other
carrier by motor operated on State Road No. 11 between
Monticello and Drifton and public convenience and neces-
sity required the operation of the Common Carrier Bus Line
for the purpose of accommodating passengers arriving at
Drifton destined for Monticello. On which state of facts
the Commission made Order 590 authorizing the receivers
of the Railway Company to operate a "combination bus and
truck" between Monticello and Drifton over State Road
No. 11 for the purpose of transporting passengers, mail and
express on schedules therein set forth. Certificate No. 183
followed as the result of the findings recited in the order.

It is the custom of the Commissioners to enlarge each cer-
tificate from time to time as occasion requires by cumula-
tive orders instead of issuing a new and additional certifi-
cate on each application for some particular service. So
orders No. 716, 777, 818 and 884 were but enlargements of
the original certificate No. 183, in that each order extended
the privilege granted by the first certificate to additional
territory served by the Railway Company and through
which it passed.

Order No. 716 was contested by the petitioner herein in
a petition for certiorari to review the order. The case is
reported as Central Truck Lines, Inc., v. Railroad Com-
mission, in 118 Fla. 526, 160 South. Rep. 22. Mr. Justice
DAVIS wrote the opinion for the Court, in which he said
that the Commission found and set forth in its order that
it was the purpose of the Railway Company to "substitute
in part truck service" for a described train service then in
operation; that such substituted service would enable the
local freight trains to serve all stations and "pick up and
deliver freight" because they would not be required to be
on any particular schedule. That service, it was estimated,

would save the rail carrier eight or ten thousand dollars a year.

The Commission also found, according to the opinion, that the applicants did not intend to "make pick-up and store door deliveries at the points designated in the order with the motor vehicles; that it was not the purpose of the Railway Company to transport for the public generally or to pick up and deliver freight for the public. The Commission found that the service was a mere substitution of truck service for rail service. It was considered that the granting of the application would result in an expedited service of express and through freight shipments of benefit to the public.

After discussing the purpose of the legislative enactment known as Chapter 14764, Acts of 1931, under which the Railroad Commission exercises its powers in the matter of supervision and regulation of the use by auto transportation companies of the public highways, the opinion uses the following language:

"Section 27 of Chapter 14764, Acts of 1931, construed in connection with paragraph 12 of Section 6703, C. G. L., 4618 R. G. S., constitutes ample statutory authority for the Railroad Commission, in its co-ordinated supervision and regulation of both classes of transportation service (rail and motor carrier) to grant a limited certificate of public convenience and necessity confined in its effect to a mere commutation of rail service into a motor carrier service, where there is no grant of a general or permanent privilege to the railroad carrier to perform an additional motor vehicle service on the highway beyond its own stations." (Text 533.)

Order No. 716 was sustained upon the principle that the service to be performed being of a special restricted and

temporary character, involving only a substituted incidental motor service covering a part only of a transportation movement on railroad trains, at a distinct disadvantage to other rail service and attended by no prejudice to the public interest or detriment to the rights of competing motor carriers, is not without the power of the Railroad Commissioners in the exercise of their judgment as to what constitutes public convenience and necessity to grant and that as such power is legislative in character its orders must be upheld as valid unless it be clearly and affirmatively shown that there has been a misapprehension of the law or facts on the Commissioners' part in arriving at a particular order.

An examination of the orders of which complaint is made, we think, shows that a restricted and limited service was permitted to accommodate intervening station points on the line of railroad where L. C. L. shipments are not handled by package or local freight trains. No independent motor truck service was permitted. The motor trucks authorized by the certificate under each order are not permitted to operate other than from depot to depot transporting and delivering from one depot to another the freight offered by the public for transportation by the rail carrier. McJunkin v. Railroad Commission, *et al.,* 122 Fla. 402, 165 South.

That permitted service does not extend to the privilege of conducting a pick up and delivery service between individuals but merely contemplates that when a particular package has become a distinctly marked rail carrier shipment by delivery to a rail carrier station or depot then the rail carrier may take such package into its motor trucks and carry it to a station or point on the railroad line where the rail carrier renders L. C. L. service, or where taking the package to the point of its destination will be nothing more in nature and character than a

substituted transportation by rail. In either case it cannot be reasonably contended that such service in any manner interferes with or is in competition with service by common carriers on the public highway which have obtained permission or certificates from the Railroad Commission for such service on the ground of public convenience and necessity.

Pick up and delivery service from individual to individual is not contemplated by either order. Such service already exists in incorporated cities and towns, such as individuals or corporations doing a local within city limit transfer business, or where the boundaries of cities or towns adjoin and such business is regulated by the legislative body of such cities or towns. See Sec. 30, Chap. 14764, Laws of 1931.

That character of service was not by the orders which are attacked intended, nor indeed do they in letter or spirit extend to the rendition of such service by the Railroad to rural communities or to individuals residing on or near public highways outside incorporated cities but only from railroad depot to railroad depot where the package has become definitely stamped as a by-rail transportation shipment.

Traffic Circular No. 30, was based upon the action of the Interstate Commerce Commission in permitting rail carriers to inaugurate pick up and delivery service at their various stations. An alternative provision of this service permitted the rail carriers to make an allowance of five cents per one hundred pounds when the freight is taken from the station platform by the consignee or delivered at the station platform by the consignor.

That alternative provision precipitated a controversy instituted by the common carriers on public highways based upon the proposition that such allowance was in fact a rebate on freight rates and operated to bring about unfair

competition between railroad companies and public highway carriers. A petition was filed before the Florida Railroad Commission asking for a hearing upon that question which resulted in Traffic Circular No. 30, which is nothing more than a denial of a formal hearing at that time. If any significance whatsoever may be attached to that circular it may be said to be an action in favor of the common carriers on public highway, because the same alternative which was allowed to railroad companies was declared to be allowable to the public highway carrier.

The point therefore that the Circular constituted an unlawful authorization to railroad companies to do a pick-up and delivery service is wholly without foundation.

Certiorari is therefore denied.

Denied.

WHITFIELD, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.